## Christopher's Estate.

*Taxation—Inheritance tax—Transfer of assets in lifetime of decedent.*

1. Where one transfers securities in his lifetime, reserving the income therefrom for life, with power to alter, change or modify the terms of the trust, or with full power of revocation, the settlor has such an interest in the subject-matter which passes on his death to those entitled under the terms of the trust as will render it subject to the inheritance tax.

2. Where a settlor, upon entering a home, is required to, and does, transfer her estate to a trustee under a contract by which she is to be paid the income therefrom for life, with vested remainder of the fund in the home, subject to the payment of her funeral expenses, and the further consideration that during her occupancy of the home she is not to be charged for board, the fact that such transfer can be revoked by either party at will, either by the voluntary withdrawal of the settlor or her dismissal from the home by the board of managers, renders the *corpus* of the fund liable to transfer inheritance tax; and such is the case although the settlor died in the home without ever having revoked the trust.

Appeal from Register of Wills. O. C. Phila. Co., Jan. T., 1926, No. 724.

THOMPSON, J., Hearing Judge.—This is an appeal "from the decision of the Register of Wills in the above estate, appraising and assessing transfer inheritance tax in the sum of $1130.93," and testimony was taken in respect thereto, from which it appears:

1. Testatrix died Jan. 27, 1926, a guest in the Leamy Home, an unincorporated charitable organization, the purpose of which is to provide a home for women belonging to the Protestant Episcopal Church, said home being started years ago by a bequest in the will of a woman named Leamy, whose name the home took, and it has been in successful operation in Mount Airy, Germantown, Philadelphia, for many years last past. It has been so firmly established as a philanthropic institution that other testators have left bequests to it.

2. The testatrix entered this home on Sept. 18, 1920, and remained there until her death.

3. Before any one is admitted to the home, they are required to furnish certain information upon a blank printed for that purpose, upon the reverse side of which, and after the signature and under the title "Special Notice," appears the following in print:

Applicants for admission to the Home owning property of any character will be expected to transfer the same to the Philadelphia Trust, Safe Deposit and Insurance Company, a corporation of the State of Pennsylvania, in trust to create a special fund, upon the following agreement:

Income at the rate of five per centum per annum from these properties and funds so put in trust shall be paid semi-annually to the applicant when admitted to the Home, to use in any way she may deem proper. Inasmuch as members of the Home are such during the pleasure of the Board (See Rule 1), in the event of a member voluntarily withdrawing from the Home, or being dismissed therefrom by order of the Board of Managers, this fact shall terminate the trust and principal and accrued interest shall be returned to such withdrawing or dismissed member.

Upon the death of a member of the Home, the principal and accrued interest to the credit of such member shall be applied

First. To defray her funeral expenses, and

Finally. All the rest, residue and remainder of said fund shall revert to and become part of the invested funds of the Leamy Home, for such uses and purposes as the Board of Managers shall elect and appoint.

In the event that any applicant becoming the owner of property after being admitted, if she remains in the Home she will be required to assign it to the Trust Company, in accordance with the above requirements, and if on the decease of any member it be found that she has left property unassigned as above, the Managers

Christopher's Estate.

shall have full power to charge board and maintenance of such individual at the rate of Eight Dollars ($8.00) per week from the date of her admission to the Home.

4. The testatrix delivered certain securities to the Philadelphia Trust Company of the value of $24,100, who gave her the following receipt and declaration of trust, at the bottom of which the Leamy Home endorsed an agreement to make good to the trustee any and all deficits by reason of the payment by it to the testatrix of 5 per cent. upon the *corpus:*

Philadelphia, October 1st, 1920.

The Philadelphia Trust Company hereby acknowledges receipt from Miss Emma Christopher, at present an inmate of the Leamy Home, Mount Airy, Philadelphia, of the following securities:

10    $1000 Bonds of the Philadelphia, Wilmington and Baltimore Railroad 4% stock Trust Certificates, registered in the name of Emma Christopher, Nos. 2232, 3277, 4428, 4633, 5217, 7018, 7613, 9502, 9633 and 9763, due 1921.

1    $5000 4% Bonds of the City of Philadelphia, registered in the name of Emma Christopher, No. 51, due July 1st, 1944.

2    $1000 Bonds of the Lehigh Valley Railroad Company General Consolidated Mortgage, registered in the name of Emma Christopher, Nos. A1199 and A1200, due 2003 (4%).

2    $1000 Bonds of the Electric and Peoples Traction Company, 4% Gold Stock Trust Certificate, registered in the name of Emma Christopher, Nos. A525 and A526.

3    $1000 Bonds of the Philadelphia and Reading Railroad Company ("Reading Terminal"), registered in the name of Emma Christopher, Nos. 1925, 2235 and 4042 (5%), due 1941.

1    $1000 Bond of the Pennsylvania and New York Canal and Railroad Company, Consolidated Mortgage 5% (reduced to 4%), registered in the name of Emma Christopher, No. 5005, due 1939.

1    $1000 Bond of the Lehigh Valley Railroad Company Consolidated Mortgage 6% (reduced to 4½%), registered in the name of Emma Christopher, due 1923, No. 11795.

1    $100 Coupon Bond, United States Third Liberty Loan, 4¼%, due 1928, No. 2322262.

Making a total par value of Twenty-four Thousand One Hundred Dollars ($24,100) IN TRUST for the following uses, intents and purposes:

The gross income from the above securities until they are disposed of, or until maturity, will be paid as it accrues to the said Emma Christopher, and thereafter at the rate of five per centum per annum, and in the event of her voluntarily withdrawing from the said home, or being dismissed therefrom by Order of the Board of Managers, this fact shall terminate the Trust and Principal and accrued Interest shall be returned to her.

Upon the death of the said Emma Christopher, if an inmate of the Home, the principal and accrued interest to her credit under this Trust shall be applied as follows:

First. To defray her funeral expenses, including her interment in her Lot, South Half of Lot 295, Section W, in Laurel Hill Cemetery, Philadelphia.

Finally. All the rest, residue and remainder of said fund shall revert to and become part of the invested funds of the Leamy Home at Mount Airy, Philadelphia, for such uses and purposes as the Board of Managers of said Home shall elect and appoint.

IN WITNESS WHEREOF the said Philadelphia Trust Company has hereunto affixed its Corporate Seal this 1st day of October, A. D. 1920.

PHILADELPHIA TRUST COMPANY,

By HENRY G. BRENGLE, President.

Attest: V. R. TILDEN, [SEAL]

Assistant Secretary.

Philadelphia, October 1st, 1920.

In consideration of the Trust assumed in the within Declaration, executed this day by The Philadelphia Trust, Safe Deposit and Insurance Company, the Board of Managers of the Leamy Home at Mount Airy hereby agrees to make good to the said Trustee any and all deficits that may at any time and from time to time arise

by reason of the payment by it to the said Emma Christopher of income at the rate of Five (5) per centum per annum upon the *corpus* or principal of the said fund.  THE LEAMY HOME, MT. AIRY, PHILADELPHIA.

By EWING L. MILLER, Manager.

5. No application for admission to the Leamy Home, signed by the testatrix, with the "Special Notice" endorsed thereon, was offered in evidence, for the reason that said application was alleged to have been mislaid. Since the hearing, counsel have found said application and it has been stipulated into the record.

6. There was no evidence offered tending to show that the Leamy Home paid anything to the trustee in fulfillment of their agreement to pay 5 per cent. on the *corpus* of the trust fund.

7. Under the terms of the relationship between testatrix and the Home and the trustee, testatrix could have retired from the Home and terminated the trust at any time and received her securities back; and the Home could for any reason dismiss testatrix from the Home, in which event, they were obliged to return to her the securities in question.

The appellants in their brief contend that decedent transferred bonds of a par value of $24,100 to a trustee for the Home, and for this she received an agreement to pay over the gross income on the securities until they were disposed of or until maturity, thereafter at the rate of 5 per cent. per annum, and during the *interim* free board and lodging at the Leamy Home. The Home ran all the risk of collecting the bonds at maturity, as well as of a deficiency of income therefrom during the life of Miss Christopher, and for six years defrayed the expense of her board and lodging, for which the rate otherwise was fixed at $8 per week, and for this received at the time the deed was given the securities in question, as to which they thus became entitled to an absolute interest, so that nothing passed on the death of the decedent.

The above contention that the Home became entitled to an absolute interest at the time the securities were deposited is not justified by the facts, in that the Home was required to surrender the securities to the decedent if she left the Home or was dismissed by them for any reason. The decedent, therefore, had an interest in the securities transferred by her in trust as aforesaid, which continued up to her death, and on her death passed to the Home.

Garman's Estate, 3 Pa. C. C. Reps. 550, relied on by the appellant, is not in point. There, decedent in his lifetime held a note of one Peter Glick for $3000, and, being doubtful as to the chance of collection, offered the note to one Philip Brown, if the latter would agree to pay him, the decedent, interest on $3000 as long as he, the decedent, lived. Brown accepted the offer, received the note and gave a bond to the decedent to pay him interest on the sum of $3000 yearly for life. He afterwards collected the full amount of the note from Glick, and for eight years paid to Garman the annual sum secured from the bond. Upon the death of Garman, the Commonwealth assessed a tax on the bond. The court sustained the appeal and held: "If the transaction was a sale by which Garman parted with the possession, title and enjoyment of a portion of his property in consideration of an annual sum to be paid to him as long as he should live, the tax would not be due in respect of the property so transferred. We are of opinion that this latter view of the matter is correct, and that the tax is not chargeable in respect of the sum of $3000 complained against."

I am of the opinion that the rule laid down in Hartley's Estate, 8 D. & C. 164, to the effect that where one transfers securities in his lifetime, reserving

Christopher's Estate.

the income thereon for life, with power to alter, change or modify the terms of the trust, or with a full power of revocation, the settlor has such an interest in the subject-matter which passes on his death to those entitled under the terms of the trust that the fund is taxable. It is a transfer by deed, made and intended to take effect in possession or enjoyment after the death of the settlor, and is clearly taxable within the provisions of section 1 of the Act of June 20, 1919, P. L. 521, as amended by the Act of May 4, 1921, P. L. 341. In this case, all the authorities necessary to an intelligent understanding of the subject-matter are collected and reviewed.

The appeal is, therefore, dismissed, and the action of the Register "appraising and assessing transfer inheritance tax in the sum of $1130.93" is confirmed.

R. M. Remick (of Saul, Ewing, Remick & Saul), for exceptant.

H. Horace Dawson, for Commonwealth, contra.

GEST, J., March 9, 1928.—We can discover no tangible distinction between the present case and Hartley's Estate, 8 D. & C. 164, upon the authority of which the judge who presided at the hearing of this appeal held that the trust estate was subject to the transfer inheritance tax. As we entirely agree with his conclusions of law, the exceptions to the decree dismissing the appeal are dismissed and the appraisement of tax is confirmed.

VAN DUSEN, J., did not sit.